IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ADRIAN R. TEAF<br>*Plaintiff*,<br><br>v.<br><br>THE ESTATE OF LOUISE S. TEAF, *et al.*,<br>*Defendants* | Civil Action No. ELH-20-190 |

**MEMORANDUM OPINION**

Plaintiff Adrian Randall ("Randy") Teaf filed a "Complaint For Declaratory Judgment" against defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Erin Reilly Lee as the personal representative of the Estate of Louise S. Teaf, as Successor Trustee of the Louise S. Teaf Revocable Trust, and as Trustee of the "Unnamed Trust for Certain Maryland Property." ECF 1 (the "Complaint"). Mr. Teaf seeks declarations that he is the sole owner of real property located in Chestertown, Maryland (the "Property"), Wells Fargo holds a valid lien on the Property, and Ms. Lee "has no legally cognizable interest" in the Property. *Id.* ¶ 53. The Complaint is supported by twelve exhibits. ECF 1-1 to ECF 1-12.

This case arises from a Post Marital Agreement (the "Agreement") and other estate planning documents executed in 2008 by Mr. Teaf and his wife, Louise Teaf. At issue is whether the Agreement required Mr. Teaf to convey the Property to Ms. Teaf, such that title to the Property passed upon her death in February 2018 to Ms. Lee, Ms. Teaf's daughter and heir.

Ms. Teaf's estate is currently in probate in Sarasota County, Florida, where the Agreement was executed and where the Teafs resided at the time of Ms. Teaf's death. Mr. Teaf seeks a share of the estate, but Ms. Lee objected to Mr. Teaf's elections and filed a separate civil

action against Mr. Teaf in the Twelfth Judicial Circuit in and for Sarasota County, Florida, alleging breach of the Agreement and seeking a constructive trust over the Property.

Ms. Lee has moved to stay or dismiss this suit, invoking the "*Wilton/Brillhart* abstention doctrine" on the ground that there is a first-in-time, parallel proceeding in a Florida state court. ECF 4 (the "Motion") at 1. The Motion is supported by six exhibits. ECF 4-1 to ECF 4-6. Plaintiff opposes the Motion (ECF 8) and defendant has replied. ECF 9.

The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Background[1]

Mr. Teaf is a citizen of Maryland. ECF 1, ¶ 5. He and Louise Teaf married on July 11, 1980, and remained married for thirty-eight years, until Ms. Teaf's death due to illness on February 26, 2008. *Id.* ¶ 17. Ms. Lee, who resides in Delaware County, Pennsylvania, is the surviving adult daughter of Ms. Teaf from a prior marriage. *Id.* ¶¶ 3, 6. Mr. Teaf is not her biological or adoptive father. *Id.* ¶ 6. According to plaintiff, Ms. Lee is the sole Personal Representative of the Estate of Louise S. Teaf, the sole trustee of the Louise S. Teaf Revocable

---

[1] Given the posture of the case, I shall assume the truth of the Complaint's allegations and draw all reasonable inference in plaintiff's favor. *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). In addition, the Court "may take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). Accordingly, I may take judicial notice of the docket entries in the Florida case. *See, e.g.*, *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016); *Schultz v. Braga*, 290 F.Supp.2d 637, 651 n. 8 (D. Md. 2003). I may also take notice of documents that are referenced in the Complaint and which are integral to plaintiff's claims. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016)

Trust, and the sole Trustee of the Unnamed Trust for Certain Maryland Property. *Id.* ¶ 7; *see id.* ¶ 8 (alleging that Ms. Lee is Ms. Teaf's "heir at law").

In 1985, the Teafs purchased the Property, which is located at 10020 Forrest Lane, Chestertown, Maryland. *Id.* ¶ 15. By deed dated January 31, 1985, and recorded among the Land Records of Kent County, Maryland, the Teafs took title to the Property as "'tenants by the entireties, to the survivor of them, and to the survivor's heirs and assigns, in fee simple.'" *Id.* ¶ 18; *see* ECF 1-1 (Deed).

Plaintiff claims that between 1985 and 2008, neither he nor Ms. Teaf took any action to sever their tenancy ownership over the Property. ECF 1, ¶¶ 2, 20. For instance, plaintiff alleges that he and his wife used the Property as collateral to secure a series of loans obtained in 1985, 1993, 2002, and 2005. *See id.* ¶¶ 21-24.

On April 14, 2008, the Teafs executed several estate planning documents in Sarasota County, Florida, where they resided. *See id.* ¶¶ 25-28. First, the Teafs executed the Post Marital Agreement, which was attested by two witnesses and notarized by Richard R. Gans. Esq., the Teafs' attorney. *See id.* ¶ 25; ECF 1-6 (the Agreement) at 8-9. The Agreement provides that it "shall be governed by Florida law." ECF 1-6, ¶ 16. In relevant part, it provides, *id.* ¶ 1 (emphasis in original):

1. **Background**. The parties are residents of Sarasota County, Florida, and were married on July 11, 1980. The parties intend that this Post Marital Agreement govern and provide for all property and other rights that may have arisen or may arise from the parties' marriage upon the death of either of them. **The parties do *not* intend in this Agreement to make any provision for the rights of each of them in the property of the other if their marriage ends by divorce.**

As to the Property, the Agreement specifies, *id.* ¶ 26:

7. **MARYLAND PROPERTY**. As of the date of this Agreement, the parties jointly own real property in the State of Maryland (the "Maryland Property").

> Husband intends to transfer his interest in the Maryland Property to Wife, whereupon she will be the sole owner. If during the parties' marriage Wife elects to sell the Maryland Property, which she is not required to so [sic], and if the Maryland Property is not jointly owned by the parties, then, unless the parties agree to a different division, one-half of the net proceeds of sale of the Maryland Property shall be paid to Husband and one-half of such proceeds shall be paid to Wife. This paragraph shall also apply to any residence that the parties agree to acquire with all or any part of the proceeds of sale from the Maryland Property.

Second, on April 14, 2008, the Teafs executed a "Memorandum" memorializing prior estate planning conversations. ECF 1, ¶ 27; ECF 1-7 (Memorandum). Regarding the Property, the Memorandum states, ECF 1-7 at 1:

> First, Louise's revocable trust agreement will contain a special separate trust for the Maryland property. Randy will be able to use the Maryland property for so long as he likes, rent-free, as long as he pays all the expenses of caring and maintaining the home. If at any time Randy wants the home to be sold, he can direct the trustee to do so. If Randy permanently ceases to use the residence as a home for two consecutive months, or if he fails to pay expenses of caring for the home, the trustee can sell the residence at the trustee's desire.
>
> Upon the closing of the sale of the Maryland home, one-half of the proceeds will be added to Erin's trust under Article 8 of Louise's trust agreement. The other half will be held in trust for Randy for the rest of his lifetime. He will receive all of the income from the trust, together with principal as needed for his health, maintenance and support. At Randy's death the trust assets will be added to Erin's trust.

Third, Ms. Teaf executed a document creating "The Louise S. Teaf Revocable Trust" (the "LST Trust"). ECF 1, ¶ 28. Article 7 of the LST Trust included the same terms as described in the Memorandum. *See* ECF 1-8 (4/14/2008 LST Trust) at 8-9.

On May 21, 2008, Mr. Gans sent a letter to the Teafs. ECF 1, ¶ 29; *see* ECF 1-9 (5/21/2008 Letter). According to plaintiff, Mr. Gans's letter made clear that in order for the Agreement to be effective, the Teafs had to transfer the Property's title to the LST Trust. ECF 1, ¶ 29. Specifically, Mr. Gans advised, ECF 1-9 at 1: "The trusts are only effective for those assets in which the legal title has been transferred to the trusts. . . . Thus, to take maximum advantage

of your new trusts, you should transfer assets to the trust during your lifetime." To that end, Mr. Gans instructed the Teafs "to consult a Maryland attorney to prepare the necessary deed." *Id.* at 2. Mr. Gans emphasized that "there is no provision in the Postmarital Agreement that you signed that *requires* Louise to include the trust for the Maryland property in her estate planning documents," meaning "Randy could give the property to Louise, after which she could change her estate planning documents to delete the trust for Randy." *Id.* (emphasis in original). In such a case, Mr. Gans warned: "Randy would have given up his interest in a valuable asset and will have received nothing in return." *Id.*

Plaintiff alleges that from 2008 until Ms. Teaf's death in 2018, neither he nor Ms. Teaf executed any documents to convey the Property to the LST Trust, "or do any public and legal act to sever the tenancy by the entireties." ECF 1, ¶ 30; *see id.* ¶¶ 31, 45, 46. Further, plaintiff claims that he and Ms. Teaf continued to use the Property as collateral to secure loans. In October 2009, Mr. and Ms. Teaf executed a Deed of Trust in favor of SunTrust Bank to secure payment of a $40,000 loan. *Id.* ¶ 35; ECF 1-10. And, in June 2013, Mr. and Ms. Teaf executed a Deed of Trust in favor of Wells Fargo to secure a loan in the amount of $192,000. ECF 1, ¶ 40. For both loans, the Property served as collateral. Plaintiff claims that by conveying the Property to SunTrust and to Wells Fargo as collateral, both he and Ms. Teaf "voluntary repudiated their prior intention to convey the Maryland Real Property into the LST Trust . . . ." *Id.* ¶¶ 38, 42.

As noted, Ms. Teaf passed away on February 26, 2018. *See id.* ¶¶ 32, 46. According to plaintiff, immediately prior to Ms. Teaf's death, he and Ms. Teaf owned the Property as joint tenants, subject to the Wells Fargo Deed of Trust. *Id.* ¶ 48. Therefore, following Ms. Teaf's death, plaintiff allegedly became "the sole owner of the Maryland Real Property as the surviving tenant by the entireties." *Id.* ¶ 49.

Ms. Teaf's estate was admitted to probate on March 23, 2018, in the Twelfth Judicial Circuit Court in and for Sarasota County, Florida. *See Estate of Louise Teaf*, 2018-CP-1161, Doc. Nos. 1,10 (12th Fla. Cir. Ct.). On August 31, 2018, Mr. Teaf filed a "Petition to Determine Exempt Property, Election of Surviving Spouse to Take a One-Half Interest of Decedent's Interest in Homestead Property and the Election of Take Elective Share" (the "Petition"). *See id.* at Doc. Nos. 32-35. Ms. Lee answered the Petition and filed objections to those elections. *See id.* at Doc. Nos. 43-46.

On October 9, 2018, Ms. Lee brought suit against Mr. Teaf in the District of Maryland on behalf of herself, the Estate of Louise S. Teaf, the LST Trust, and an Unnamed Trust for Certain Maryland Property, alleging, *inter alia*, breach of the Agreement and seeking a constructive trust over the Property. ECF 1, ¶ 50; *see Lee v. Teaf*, DKC-18-03115, ECF 1 (D. Md.). In response, Mr. Teaf moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). *See Lee*, DKC-18-03115, ECF 6. Of relevance here, Mr. Teaf asserted that the Court lacked jurisdiction to hear Ms. Lee's case because both he and the Estate were Florida citizens and therefore Ms. Lee could not satisfy the complete diversity of citizenship requirement of 42 U.S.C. § 1332. *See id.* at ECF 6-1 at 17-19. Ms. Lee subsequently filed a Notice of Voluntary Dismissal, without prejudice, *id.* at ECF 7, and Judge Deborah Chasanow, to whom the case was assigned, approved the voluntary dismissal on December 4, 2018. *Id.* at ECF 8.

Thereafter, on December 21, 2018, Ms. Lee commenced a civil action against Mr. Lee in Florida, in the Twelfth Judicial Circuit Court (the "Florida Case"). ECF 1, ¶ 51; *see Lee v. Teaf*, 2018-CA-728-NC, Doc. No. 1 (12th Fla. Cir. Ct.). Among other claims, Ms. Lee asserted ownership over the Property, pursuant to Ms. Teaf's estate documents. The suit was

consolidated with the probate proceedings concerning Ms. Teaf's estate on March 26, 2019. *See Lee*, 2018-CA-728-NC, Doc. No. 16; *see also Estate of Louise Teaf*, 2018-CP-1161, Doc. No. 63. Fierce litigation ensued; the docket for the Florida Case contains more than 250 entries. *See Lee*, 2018-CA-728-NC.

On July 10, 2019, Mr. Teaf executed another Deed of Trust on the Property in favor of Wells Fargo to secure repayment of a loan in the amount of $268,000. ECF 1, ¶ 52. Mr. Teaf claims that his "right to grant and convey the property" has been "impaired by the cloud created by Defendant Lee seeking a constructive trust." *Id.* ¶ 54.

Judge Hunter Carroll, of the Twelfth Judicial Circuit Court, denied Mr. Teaf's Petition on August 23, 2019. *See Lee*, 2018-CA-728-NC, Doc. No. 49. He observed, *id.* at 6: "Viewing the Post Martial Agreement Settlement in the context of all documents signed on March 14, 2008, to effectual [sic] their estate planning strategy, the Court cannot find, and does not find, the Post Marital Settlement to be unfair or unreasonable for Mr. Teaf." Further, the Court found that Mr. Teaf entered into the Agreement "on his own free-will." *Id.* Therefore, the court found that "Mr. Teaf made a knowing, voluntary, and intelligent waiver of his spousal rights in the Post Marital Agreement." *Id.* at 7.

However, the court declined to rule on the ownership of the Property, which it observed was "hotly contested." *Id.* at 6 n.1. The court stated, *id.* (emphasis in original):

> For purposes of the matters before the Court today, the Court need not provide—and does not provide—a final construction of paragraph 7 of the Post Marital Agreement (Plaintiff's Ex. 5) or a declaration as the ownership of the Maryland property. The Court simply uses Mr. Teaf's "worst case" for purposes of analyzing the Post Marital Agreement is unfair or unreasonable to Mr. Teaf under Casto v. Casto, 508 So. 2d 330 (Fla. 1987), and its progeny. In further proceedings in these consolidated cases, based on all evidence, Mr. Teaf may or may not prevail on his construction of Paragraph 7. ***In other words, the parties may not use this finding for claim preclusion purposes.***

Thereafter, on January 22, 2020, Mr. Teaf initiated this suit. ECF 1. The following month, on February 20, 2020, plaintiff filed in the Florida Case an "Emergency Motion For Stay Of Trial Court Proceedings In Both Probate Court And Civil Court." ECF 4-1; *see Lee*, 2018-CA-728-NC, Doc. No. 185. Mr. Teaf asserted, ECF 4-1 at 4: "Since many of the case facts overlap and resolution of the issues involved in the Maryland federal court case will resolve issues contained in this Florida state court case, . . . it [is] imperative to stay the Florida state court proceedings until resolution of the Maryland federal court case." Mr. Teaf stressed that denial of his request for a stay would generate duplicative litigation that could potentially result in "conflicting rulings entered by a state court in Florida and a federal court in Maryland . . . ." *Id.* at 6.

Following a hearing on February 6, 2020, Judge Carroll denied Mr. Teaf's motion. *Lee*, 2018-CA-728-NC, Doc. No. 190. The court observed that it had "heavily invested judicial resources in this case": "these consolidated cases have been litigated heavily for more than 1 year"; the court "issued an 11 page, single space Order following an evidentiary hearing" on August 23, 2019; and the court had set the case for trial on July 27, 2020. *Id.*; *see also* ECF 4-6 (2/6/2020 Transcript) at 23-24 (explaining the basis for the court's denial of Mr. Teaf's motion).

On February 20, 2020, Ms. Lee moved to stay or dismiss this suit under the doctrine of "*Wilton/Brillhart* abstention." ECF 4.

Additional facts are included, *infra*.

## II. Discussion

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Where a court has jurisdiction, however, its obligation to hear the case "'is virtually

unflagging.'" *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Comm., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)); *see Mata v. Lynch*, ___ U.S. ___, 135 S. Ct. 2150, 2156 (2015); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *accord Wash. Gas Light Co. v. Prince George's Cty. Council*, 711 F.3d 412, 418 (4th Cir. 2013). That said, the Supreme Court has identified several carefully delineated categories of cases where a federal court may abstain from deciding a case, even if it is one that is properly before it. *See New Orleans Pub. Serv. Inc. v. Cty. Council of New Orleans*, 491 U.S. 350, 359 (1989).

Pursuant to *Colorado River*, 424 U.S. at 818, a district court may stay a case when faced with "parallel federal and state suits," if doing so would facilitate "wise judicial administration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). But, "a court must apply *Colorado River* abstention 'parsimoniously.'" *VonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (citation omitted).

In the absence of "traditional grounds for abstention," a stringent "exceptional circumstances" standard ordinarily governs a federal court's decision whether to abstain from exercising jurisdiction. *Chase Brexton Heath Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (analyzing *Colorado River* abstention). In other words, even where there is parallel state and federal litigation, "'[a]bdication of the obligation to decide cases'" is justified only in "'exceptional circumstances.'" *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 14 (citations and internal quotation marks omitted).

Of relevance here, the Supreme Court reaffirmed in *Wilton v. Seven Falls. Co.*, 515 U.S. 277, 286 (1995), that district courts have "greater discretion" to abstain from exercising jurisdiction "in declaratory judgment actions than that permitted under the 'exceptional

circumstances' test of *Colorado River* and *Moses H. Cone*." In other words, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their discretion yields to considerations of practicality and wise judicial administration." *Id.* at 288. This is because the Declaratory Judgment Act, 28 U.S.C. § 2201, which is the source of a federal court's authority to issue a declaratory judgment, has been understood, "[s]ince its inception," to "confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)).

Indeed, the Declaratory Judgment Act contains a "textual commitment to discretion": it provides that a court "'*may* declare the rights and other legal relations of any interested party seeking such declaration.'" *Wilton*, 515 U.S. at 286 (quoting 28 U.S.C. § 2201(a)) (emphasis in *Wilton*); *see also United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). Thus, of import here, when a federal suit seeks only discretionary declaratory relief, and there is another proceeding regarding the same issues pending in a state court, "a district court may either stay the suit in favor of state court action or 'decline to exercise jurisdiction altogether by . . . dismissing the suit or,'" when the case has been removed from a state tribunal, by "'remanding it to state court.'" *Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 823 (4th Cir. 2000) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996)).

The inherent discretion of a federal court to abstain from entertaining a declaratory action is often referred to as *Wilton*/*Brillhart* abstention or *Wilton* abstention. The *Wilton* abstention doctrine implicates the court's own interests in judicial economy, "practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

In general, the Fourth Circuit has said that "'a declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (alteration and internal quotation marks omitted) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)). However, "[w]hen a related state court proceeding is pending," such as Ms. Lee's suit against Mr. Teaf, "'considerations of federalism, efficiency, and comity' should inform the district court's decision whether to exercise discretion over a declaratory judgment action." *Coffey*, 368 F.3d at 412 (citations and some internal quotation marks omitted).

In a number of cases decided in the wake of *Wilton*, the Fourth Circuit has elucidated and applied several factors to guide district courts in the exercise of their discretion whether to abstain from issuing a declaratory judgment. *See, e.g.*, *Great Am. v. Gross*, 468 F.3d 199, 211-12 (4th Cir. 2006); *New Wellington Fin. Corp. v. Flagship Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005); *Coffey*, 368 F.3d 409; *Myles Lumber*, 233 F.3d 821; *Kapiloff*, 155 F.3d 488; *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419 (4th Cir. 1998). The factors are often called the "*Kapiloff* factors" or the "*Ind-Com* factors," deriving from the cases decided soon after *Wilton*.[2]

---

[2] Several of the factors articulated in *Kapiloff* and *Ind-Com* were drawn from an earlier case, *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994). But, the Fourth Circuit has recognized that one aspect of *Nautilus* was overruled by the Supreme Court in *Wilton*. The *Nautilus* Court had balanced the factors itself, applying an "essentially 'de novo'" standard of review to the district court's decision to abstain from exercising jurisdiction over a declaratory action. *Nautilus*, 15 F.3d at 375 (citation omitted). However, the Supreme Court ruled in *Wilton* that such a decision must be reviewed only "for abuse of discretion." *Wilton*, 515 U.S. at 290; *see Centennial Life Ins.*, 88 F.3d at 257 (while reaffirming use of factors articulated in *Nautilus*, stating: "To whatever extent our previous decisions have implied further constraints on district court discretion [to abstain from exercising jurisdiction over a declaratory action], *see, e.g.*, *Nautilus*, . . . those decisions must give way to the clear teachings of *Wilton*.").

In balancing the factors, "'[t]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief.'" *Ind-Com*, 139 F.3d at 423 (citation omitted). Although it "should be a significant factor in the district court's determination," it "is not dispositive." *Id.*

If *Wilton* abstention is available for the entire case, a court need not apply the more stringent *Colorado River* "exceptional circumstances" test. *See Gross*, 468 F.3d at 210-11. Therefore, before applying the *Kapiloff* factors, I must consider whether this case qualifies as a purely declaratory action, to which *Wilton* abstention, guided by the *Kapiloff* factors, may apply.

The Fourth Circuit has made clear that "the *Brillhart*/*Wilton* standard [of discretionary abstention] does not apply when a declaratory judgment claim is joined with a nondeclaratory claim, such as a claim for damages or injunctive relief." *Gross*, 468 F.3d at 211. The Court explained: "Because a court is required to address nondeclaratory claims, . . . the benefit derived from exercising discretion not to grant declaratory relief is frustrated" in such a case. *Id.*

Here, plaintiff's Complaint seeks only declaratory relief. *See* ECF 1 at 8-10. Therefore, I am satisfied that the Court is vested with discretion under *Wilton* to determine whether to exercise jurisdiction in this case. Accordingly, to make that discretionary determination, I must apply the *Kapiloff* factors, to which I now turn.

In *Kapiloff*, 155 F.3d at 493-94 (alteration in *Kapiloff*; internal citations omitted), the Fourth Circuit said:

> [D]istrict courts are not without guidance in exercising [their] discretion. We have explained that a declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" At the same time, whenever a parallel proceeding is pending in state court, district courts must also take into account "considerations of federalism, efficiency, and comity." To aid district courts in balancing the state and federal interests when a parallel state action is

pending, we have articulated four factors for consideration: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

The first factor, whether the state has a strong interest in having the issues decided in its courts, does not favor either side. Arguably, Florida has little interest in a dispute concerning real property located in Maryland. That is especially so when, as here, neither of the real parties in interest is a citizen of Florida. *See* ECF 1, ¶¶ 5, 6 (alleging that Mr. Teaf is a Maryland citizen and Ms. Lee is a citizen of Pennsylvania).

But, Florida does have an interest in the interpretation of the Agreement, which Mr. Teaf concedes is central to determining the Property's ownership. *See* ECF 8 at 1 ("This Declaratory Judgment action involves the interpretation, construction and application of a written Post Marital Agreement . . . ."); *see also id.* at 10. For starters, the Agreement was executed in Florida, where Mr. and Ms. Teaf were then domiciled. And, it pertains to the distribution of marital property upon divorce or the death of Mr. or Ms. Teaf. Undoubtedly then, Florida has an interest in the Agreement, as it touches on the domestic relations of persons who were its citizens at the time the Agreement was executed. *See Hillman v. Maretta*, 569 U.S. 483, 490 (2013) ("The regulation of domestic relations is traditionally the domain of state law.").

Moreover, although Mr. Teaf asserts that Maryland law applies to this suit, *see* ECF 8 at 4, the Agreement specifies that its terms "shall be governed by Florida law." ECF 1-6, ¶ 16. Under Maryland's choice of law principles, a contract's choice of law provision is enforceable "unless the choice of law jurisdiction has no substantial relationship to the transaction, or there is a fundamental policy difference in the laws of another jurisdiction with a more substantial

13

interest in the parties or the transaction." *U.S. for use & benefit of Tusco, Inc. v. Clark Constr. Grp.*, 235 F. Supp. 3d 745, 752 n.9 (D. Md. 2016) (citing *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 921 A.2d 799, 803-05 (2011)). Here, Florida has a substantial relationship to the Agreement, as it concerns the domestic relations of former Florida citizens. The parties have identified no conflict between Maryland and Florida law and, in any event, it cannot be said that Maryland's interests in the Agreement are paramount to Florida's. Therefore, the Agreement is governed by Florida law.

The application of Florida law slightly favors declining jurisdiction because "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case." *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992). That said, though, the Fourth Circuit has observed that a state's interest is "not particularly significant" where "[a] federal court would be unlikely to break new ground or be faced with novel issues of state interest." *Kapiloff*, 155 F.3d at 494. In this regard, Ms. Lee has not identified any vexing issues of Florida law. *See also Centennial Life Ins.*, 88 F.3d at 258 ("[A]lthough only state law is at issue, the relevant state law is not problematic or difficult to apply, which weakens somewhat the state's interest in having these issues decided in state court."). Accordingly, while Florida certainly has an interest in this case, the first *Kapiloff* factor carries little weight in the overall analysis.

The interests of efficiency and judicial economy, the second *Kapiloff* factor, strongly militate against the exercise of jurisdiction. Generally, "'the first suit should have priority, absent the showing of balance of convenience in favor of the second action.'" *Riley v. Dozier Internet Law, PC*, 371 F. App'x 399, 403 (4th Cir. 2010) (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)). Indeed, if courts routinely tried to

leapfrog one another, it would "produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigation, and expending limited judicial resources." *Riley*, 371 F. App'x at 403.

Mr. Teaf does not seriously dispute that the second *Kapiloff* factor cuts against him. See ECF 8 at 10. And, for good reason. Since December 2018, Mr. Teaf and Ms. Lee have vigorously contested the Property's ownership before Judge Carroll in the Florida Case. Indeed, as Judge Carroll observed in denying Mr. Teaf's motion to stay, the Florida courts have invested "a lot of judicial labor" in this case. ECF 4-6 at 24. Judge Carroll has held numerous hearings, and he has made credibility determinations. *Id.* (observing that the case has entailed no less than nine hearings). And, he partially construed the Agreement in his ruling of August 23, 2019. *See Lee*, 2018-CA-728-NC, Doc. No. 49. Notably, Judge Carroll expressly declined to decide whether the Agreement extinguished Mr. Teaf's ownership stake in the Property, observing that he would do so at a later juncture. *See id.* at 6 n.1. Judge Carroll is best positioned to accomplish that task, given his familiarity with the underlying facts and Florida principles of contract and estate law.

Likewise, the third *Kapiloff* factor, the presence of overlapping issues giving rise to the possibility of conflicting rulings, countenances in favor of abstention. In opposing the Motion, Mr. Teaf acknowledges that "there is some overlapping of fact and the law" in the two actions. ECF 8 at 10. That is an understatement. In the Florida Case, Ms. Lee asserts that the Agreement and Ms. Teaf's estate planning documents resulted in Ms. Teaf acquiring sole ownership of the Property; she claims that the Property passed to her upon Ms. Teaf's death. *See Lee*, 2018-CA-728-NC, Doc. No. 1. In the case *sub judice*, Mr. Teaf seeks to quiet title to the Property, claiming that the Agreement did not sever the tenancy by the entireties that he and Ms. Teaf held

in the Property, and therefore he is the Property's sole owner. *See* ECF 1. In other words, "both cases center on an identical core question," *Riley*, 371 F. App'x at 403: Did the Agreement terminate Mr. Teaf's ownership of the Property or, instead, were the terms effective only upon his transfer of his interest in the Property?

Despite these factual and legal similarities, Mr. Teaf insists that the "Florida lawsuit is not a parallel state action because the relief and the parties are not the same." ECF 8 at 11. But, Mr. Teaf's contention is belied by the arguments that he pressed before Judge Carroll in urging a stay of the Florida Case. *See Lee*, 2018-CA-728-NC, Doc. No. 185. There, Mr. Teaf argued that "many of the case facts overlap and resolution of the issues involved in the Maryland federal court case will resolve issues contained in this Florida state court case." *Id.* at 4. Mr. Teaf also asserted that failure to stay the Florida Case could result in "conflicting rulings entered by a state court in Florida and a federal court in Maryland . . . ." *Id.* at 6.

Mr. Teaf cannot in one breath urge the State court to stay Ms. Lee's suit in light of its overlap with this case and in the next breath assert before this Court that the cases are dissimilar. Indeed, under principles of judicial estoppel, a party generally may not take a position in one judicial proceeding "that is inconsistent with a stance previously taken" in another court. *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007); *see also New Hampshire v. Penn. Nat. Mut. Cas. Ins. Co. v. Maine*, 532 U.S. 742, 749 (2001); *Penn. Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 117 (4th Cir. 2012); *Eagan v. Calhoun*, 347 Md. 72, 87-88, 698 A.2d 1097, 1105 (1997). The purpose of the doctrine of judicial estoppel is "'to protect the integrity of the judicial process . . . .'" *New Hampshire*, 532 U.S. at 749 (citation omitted).

To be sure, the two suits are not mirror images. Wells Fargo is not a party in the Florida Case. And, Ms. Lee's suit is not a quiet title action. But, Wells Fargo is merely a nominal

defendant here, as a lien holder on the Property; the real dispute is between Mr. Teaf and Ms. Lee, both of whom claim ownership of the Property. Even if the Florida court lacks jurisdiction over the Property itself, its construction of the Agreement, if reduced to judgment, would likely be enforceable in this Court under the doctrines of collateral estoppel or res judicata, *see Montana v. United States*, 440 U.S. 147, 153 (1979), or pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738. *See Exxon-Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 (2005). In sum, given the overlap of factual and legal issues, I am satisfied that there is a genuine possibility of a collision between federal and state tribunals.

If there was any question that abstention is proper, the fourth *Kapiloff* factor, whether the federal action is "procedural fencing," erases any lingering doubts. Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Gross*, 468 F.3d at 212. Here, the timing of Mr. Teaf's suit and his course of conduct in the Florida Case strongly suggests that his suit is mere forum shopping.

As noted, in October 2018, Ms. Lee filed suit in the District of Maryland, seeking a constructive trust over the Property. *See Lee*, DKC-18-03115, ECF 1. In response, Mr. Teaf challenged this Court's subject matter jurisdiction, asserting that because he and Ms. Teaf's Estate were Florida citizens there was no complete diversity of citizenship. *See id.* at ECF 6-1 at 18. Mr. Teaf acknowledged that he resided in Maryland, but he maintained that he was not domiciled there; Ms. Lee had "forced him" to vacate his Florida residence following Ms. Teaf's death, *id.* at 18, and he was "planning his return to Florida." *Id.* at 19. Ms. Lee subsequently dismissed the suit and refiled it in Florida in December 2018. However, Mr. Teaf apparently had a change of heart, because two years later he initiated this suit, proclaiming that he is a citizen of

Maryland. ECF 1, ¶ 5. The month after he filed his Complaint in federal court, Mr. Teaf asked the Florida court to hold Ms. Lee's action in abeyance. *See Lee*, 2018-CA-728-NC, Doc. No. 185. This sequence of events is quintessential forum shopping. Accordingly, the fourth *Kapiloff* factor weighs against the exercise of jurisdiction.

Having considered the *Kapiloff* factors, I am satisfied that the exercise of jurisdiction is unwarranted at this stage. However, it would be inefficient to dismiss this action only for Mr. Teaf or Ms. Lee to refile suit in the wake of the Florida Case, in order to resolve final disposition of the Property. Further, the Supreme Court has advised that a stay is preferable to dismissal because "it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. at 288 n.2. Accordingly, heeding the Supreme Court's suggestion, I shall stay rather than dismiss this action.

### III. Conclusion

For the reasons stated above, I shall grant the Motion (ECF 4). An Order follows, consistent with this Memorandum Opinion.

Date: May 8, 2020                             /s/
                                              Ellen Lipton Hollander
                                              United States District Judge